## The City of Emporia v. W. Shaw.
### No. 711.

1. City Ordinance—*not void on account of exception.* Appellant was convicted of violating a city ordinance, the title and first section of which are as follows:

"An Ordinance to prohibit hotel porters and runners, hack and 'bus men, and peddlers, from soliciting custom on the platform of the passenger depot of the Atchison, Topeka & Santa Fe Railroad Company in the City of Emporia, Kan., and at the crossing of Neosho Street and Third Avenue in said City.

"*Be it Ordained by the Mayor and Councilmen of the City of Emporia:*

"Section 1. All hotel porters and runners, hack and 'bus men, and peddlers, are prohibited and forbidden to solicit custom or patronage on any of the platforms of the passenger depot of the Atchison, Topeka & Santa Fe Railroad Company in the City of Emporia, Kan., and at the crossing of Neosho Street and Third Avenue in said City: *Provided, however,* that the standing by their hacks or omnibuses or their horses by hack men within four feet of the north edge of the platform shall not be considered a violation of the provisions of this section: *And provided further,* that the selling of newspapers shall not be considered a violation of this section."

*Held,* that the exception stated in said section does not render the ordinance invalid.

2. ———— *not suspended by change of name of building described.* Mere change of ownership, or perhaps more correctly, in the name of the owner, which did not affect the character of the depot and platforms and the nature of their uses, or their relation to the public, *held,* not to have suspended the operation of the ordinance.

Appeal from Lyon District Court. Hon. W. A. Randolph, Judge. Opinion filed December 20, 1897. *Affirmed.*

*Buck & Spencer,* for appellee.
*Madden Brothers,* for appellant.

Milton, J. Defendant, a hack driver, was convicted in the police court of the City of Emporia, and afterwards in the District Court on appeal, of violating

CITY OF EMPORIA V. SHAW.          809

Dec. 20, 1897.          Opinion.   Milton, J.          C. Div.

an ordinance of said City, which ordinance, with its title, is as follows :

"AN ORDINANCE to prohibit hotel porters and runners, hack and 'bus men, and peddlers, from soliciting custom on the platform of the passenger depot of the Atchison, Topeka & Santa Fe Railroad Company in the City of Emporia, Kan., and at the crossing of Neosho Street and Third Avenue in said City.

"*Be it Ordained by the Mayor and Councilmen of the City of Emporia:*

"SECTION 1. All hotel porters and runners, hack and 'bus men, and peddlers, are prohibited and forbidden to solicit custom or patronage on any of the platforms of the passenger depot of the Atchison, Topeka & Santa Fe Railroad Company in the City of Emporia, Kan., and at the crossing of Neosho Street and Third Avenue in said City : *Provided, however,* that the standing by their hacks or omnibuses or their horses by hackmen within four feet of the north edge of the platform shall not be considered a violation of the provisions of this section : *And provided, further,* that the selling of newspapers shall not be considered a violation of this section.

"SEC. 2. Any person or persons violating any of the provisions of section 1 of this ordinance shall, upon conviction thereof, be fined in any sum not less than one dollar, nor exceeding twenty-five dollars, and costs, and shall stand committed until such fine and costs are paid.

"SEC. 3. This ordinance shall take effect from and after its publication.

"Approved May 5, 1885."

The complaint charged the offense to have been committed on January 21, 1897. Appellant makes five specifications of error, as follows :

"*First,* the ordinance is violative of section 9, Cities of the Second Class Act, which requires the subject-matter of the ordinance to be clearly expressed in the title ; *second,* the ordinance is illegal, unreasonable

and in restraint of trade; *third*, the ordinance in question is partial and uncertain; *fourth*, there is a fatal variance between the ordinance and the complaint and proof; *fifth*, the evidence does not justify the judgment.''

We shall change the order for convenience of consideration.   As to the fifth specification, we think the evidence sufficiently sustains the judgment.

The fourth requires little more than a statement of the facts.   On the trial, the City made the following admission:

''It is admitted and agreed that the Atchison, Topeka & Santa Fe Railroad Company moved into the stone depot building between Rural and Neosho streets, in this City, in 1885; that a mortgage on the railroad was foreclosed, and in the reorganization of the company it took the name of The Atchison, Topeka & Santa Fe Railway Company, a separate organization under the laws of the State of Kansas; that it took out a new charter under the name of The Atchison, Topeka & Santa Fe Railway Company; that said company took possession of the road in January, 1896, and has continued to own and operate the railroad and all the platforms and appurtenances thereto, including the platforms spoken of in the evidence in this case.''

The ordinance has been in force since 1885.   If it was not invalid for some other reason, it remains in force as to the place it describes.   Mere change of ownership, or perhaps more correctly, in the name of the owner, which did not affect the character of the depot and platforms and the nature of their uses, or their relation to the public, cannot be held to have suspended the operation of the ordinance.

Turning now to the first specification of error, counsel call attention to section 9, chapter 19, General Statutes of 1889, relating to cities of the second

class, which provides "that no ordinance shall contain more than one subject, which shall be clearly expressed in the title." We quote from appellant's brief :

"A part of section 1 of the ordinance in question prohibits hotel men, 'bus men, etc., from soliciting custom, etc. ; but contains a proviso within its body, which becomes a part of its texture, that attempts to regulate the business. Section 2 provides a criminal liability for those who violate section 1, that is, violate it in the terms of its proviso. It is clear to be seen that the title of the ordinance is not broad enough to embrace the section in the terms of its proviso. Section 1, in the terms of its proviso, is regulative in its nature, and not prohibitive. The Supreme Court has held, in *City of Emporia v. Volmer* (12 Kan. 622), that the words 'restrain' and 'regulate' are not synonymous with 'prohibit.' Applying this rule, a title that prohibits would not include restraint or regulation. *Stebbins v. Mayer*, 38 Kan. 575."

As we read the title of the ordinance, it purports to prohibit five classes of people from soliciting custom on the railroad platforms at the depot and at the intersection of Neosho Street and Third Avenue, to wit : Hotel porters and runners, hackmen, 'bus men, and peddlers.

An apparent exception is made in section 1 of the ordinance in relation to hackmen and 'bus men, but this exception does not constitute a departure from the purposes of the ordinance as expressed in the title thereof. It does not permit drivers of hacks and omnibuses to " solicit custom or patronage " on the platforms mentioned in the ordinance, but it declares that certain other acts on the part of such drivers shall not be considered as a violation of the ordinance. The reason for this provision is obvious. Drivers of hacks and omnibuses must use a portion of the depot plat-

812          CITY OF EMPORIA v. SHAW.

S. Dept.          Opinion.   Milton, J.          6 Kan. App.

form in order to accommodate persons who are entering or leaving such vehicles.   If there were no exception in the ordinance they would not dare receive or unload passengers at the platform ; hence, a great inconvenience to the public would result.   Besides, if no exception were made, and drivers of such vehicles should use the platforms only for receiving their passengers, it would be almost impossible to distinguish between this act and the act of soliciting.   The ordinance, therefore, recognizes the nature of the case to which it is to be applied.

As to the second and third specifications of error, counsel deny the power of the city council to pass the ordinance in question, and contend that the power to pass an ordinance must be vested by the Legislature in the governing body of a city in express terms, or be necessarily implied in and incident to the powers expressly granted, and must be essential to the declared purposes of the corporation.   They further claim that powers encroaching upon the rights of the public or of individuals must be plainly and literally conferred by the charter ; that the ordinance must be reasonable, not inconsistent with the laws of the State, not repugnant to fundamental rights, and not partial or unfair.   The case of *Anderson v. City of Wellington* (40 Kan. 173) is cited as sustaining such claims.   In that case the ordinance declared it unlawful for any person or persons, society, association or organization to parade any public street of the city of Wellington shouting, singing or beating drums or tambourines, or playing upon any other musical instrument, or doing any other act designed or intended or calculated to call together an unusual crowd or congregation of people on any of said public streets, without the consent of the mayor of said city.   The

CITY OF EMPORIA V. SHAW.                    813

Dec. 20, 1897.        Opinion.   Milton, J.              C. Div.

court held that the right of the people to assemble in the street for any lawful purpose could not be abridged by the city council, and that the greatest exercise of power in such direction by a city council would be to prescribe regulations respecting parades and assemblies. The court used the following language :

"All by-laws made to regulate parades must fix conditions upon which all persons or associations can move upon the public streets, expressly and intelligently, such conditions operating on all of the same class alike, and being reasonable in their requirements and not oppressive in their operation ; and must not give the power of permitting or restraining processions to an unregulated official discretion."

We observe that the case at bar is entirely different from the one cited. Here the council, in the interest of the public and for its protection, comfort, and convenience, has prohibited the exercise of certain vocations at a certain place. All who travel cannot but appreciate such a regulation. We think, too, that sections 31 and 68 of the Act relating to Cities of the Second Class confer a large discretion upon the councils of such cities as to the passage of ordinances and regulations which may be deemed expedient for the maintenance of the peace, good government and welfare of the city.

It appears that the line within which hackmen and 'bus men were permitted to operate was clearly marked, and that the defendant admitted to two witnesses that he knew he was six feet or more beyond the line.

We cannot hold that the ordinance is partial and uncertain, nor that it is an unreasonable exercise of the powers possessed by the city council.

The judgment of the trial court is affirmed.