**FORT WORTH & D. C. RY. CO. v. KIDWELL.  (No. 8726.)***

(Court of Civil Appeals of Texas. Fort Worth. Nov. 10, 1917. Rehearing Denied Dec. 23, 1922.)

1. **Depositions** ⟨⟩107(1)—**Evidence** ⟨⟩501(2) —**Opinion of nonexpert witness in deposition held properly admitted in passenger's action for injuries.**

In an action for injuries sustained by a passenger falling into an excavation on a railroad platform, while about to board a train, admission of an interrogatory in a deposition and answer thereto that plaintiff seemed to be injured and was always complaining of pain, *held* not erroneous, since objection was not made before trial, and since a nonexpert witness may give an opinion when he states the fact upon which it is based.

2. **Carriers** ⟨⟩321(23)—**Evidence held not to require instruction as to responsibility for obscuring light on station platform.**

In an action for injuries to a passenger falling into an excavation in a station platform, when about to board defendant's train, evidence as to the presence of busses and rigs obscuring the light *held* not to require an instruction that, if the light which would have shown upon the

place where plaintiff was injured was obscured, defendant would not be responsible, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 6591, 6693, requiring railroad companies to keep their depots well lighted.

**3. Carriers ⬦280(1)—Degree of care owing by carrier to passenger stated.**

Railroad companies are not insurers of the safety of their passengers further than would be required in the exercise of such high degree of foresight as to possible danger and such a high degree of prudence in guarding against them as would be used by a very prudent, cautious, and competent person under similar circumstances.

**4. Damages ⬦30—Compensation for pain and suffering, past and future, and loss of time held allowable in passenger's action against carrier.**

Where plaintiff was injured by stumbling in an excavation on defendant's station platform, while about to board a train, in estimating damages the jury might consider the time lost, pain and mental anguish which he had suffered, and which he would probably suffer in the future, notwithstanding that subsequent to the trial he might entirely recover.

**5. Carriers ⬦346(½)—Passenger stumbling in depression in station platform held not guilty of contributory negligence.**

Where plaintiff stumbled in a depression in a platform of defendant's railroad station, while about to board a train, evidence *held* to sustain a finding that he was not guilty of contributory negligence.

**6. Damages ⬦132(6)—$1,000 held not excessive for injuries to ankle and hip of railroad passenger.**

$1,000 damages *held* not excessive, where a passenger stumbled into a depression on defendant's station platform, spraining his ankle and sustaining a stiffness of the hip joint, his earning capacity being reduced to one-half of what it was before.

**7. New trial ⬦108(4)—Evidence as to mistake of witness relative to depth of depression in platform causing injury held not to require new trial.**

In an action for injuries sustained by a passenger stumbling into a depression in defendant's station platform, evidence of witnesses who testified by deposition that they were mistaken in stating that the depression was five inches deep, when it was only 2⅜ to 3¾ inches deep, *held* not to require a new trial.

Appeal from District Court, Clay County; Wm. N. Bonner, Judge.

Action by G. W. Kidwell against the Fort Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Thompson, Barwise & Wharton, of Fort Worth, and Taylor, Allen & Taylor, of Henrietta, for appellant.

Wantland & Parrish, of Henrietta, for appellee.

BUCK, J. This is a suit for damages filed in the district court of Clay county by G. W. Kidwell against the appellant, for alleged injuries caused by falling into a hole, excavation, or inequality in the platform adjacent to defendant company's depot at Vernon, Tex.

Plaintiff alleged that he had secured a ticket as a passenger on defendant's train, then about due, and, while attempting to board the train, he fell into this hole and injured himself in the respects pleaded. He alleged negligence on the part of the defendant company, by reason of permitting its platform to be in a defective condition, and by reason of its failure to properly light said platform, so that he, as a passenger, might be able to see said hole or excavation. He sought a recovery in the sum of $5,050.

Defendant pleaded that it was not negligent in the respects claimed by plaintiff; that its platform was well lighted at the place where plaintiff claimed to have been injured; that if plaintiff had exercised ordinary care he could have seen any hole or depression at said place; and that the plaintiff was guilty of contributory negligence in not looking where he was stepping.

From a verdict and judgment in favor of plaintiff in the sum of $1,000, the defendant has appealed.

Appellant in its first assignment urges error in the action of the court in admitting the eleventh interrogatory and the answer thereto in the deposition of the witness S. H. Leake, a hotel keeper at Oklaunion, to which place the plaintiff went from Vernon on the night of his injury, and where he stopped at Leake's hotel and was nursed by Leake from the night of August 8, 1916, to September 4th following. The interrogatory propounded by plaintiff was:

"State fully the condition of Kidwell when you did treat him, and also state whether or not there was any evidence of pain and suffering during the time you were with him and treated him, and, if so, state what such evidences were."

To which the deponent witness answered:

"He seemed to be injured and suffering with his hip and ankle when he got to the hotel and suffered all the time he was there, as was evidenced by the fact that he could not walk and was always complaining of pain, and the expression about his face indicated the same thing. He complained especially when I treated him, and when he tried to move in bed."

The second assignment is directed to the question propounded and so much of the answer as begins with "He seemed to be injured," and closes with "was always complaining of pain." The objections noted in the two bills of exceptions directed to this alleged error show that counsel for defendant objected to the question and answer for the several reasons that the interrogatory

calls for the conclusion of the witness; because a proper predicate had not been laid for the introduction of this testimony, and the witness was not an expert; because the answer called for a self-serving declaration of the plaintiff and was not part of the res gestæ, and was invading the province of the jury, and was not responsive, and "might be prejudicial."

Appellee urges that the two assignments should be overruled, for several reasons, one of which is that no motion was filed by the defendant to suppress the question and answer of which complaint is made, under article 3676, V. S. Texas Civil Statutes; and that the objections go to the form and manner of taking the deposition, and therefore, defendant cannot be heard at the time of offering testimony on the trial to urge its objections.

It is held in a long line of decisions that objection to the answers to interrogatories that they are not responsive must be made in writing and notice given before the trial. Lee v. Stowe, 57 Tex. 444; Brown v. Mitchell, 75 Tex. 9, 12 S. W. 606; Parker v. Chancellor, 78 Tex. 524, 15 S. W. 157; and other cases cited in 6 Ency. Dig. of Texas Reports, p. 373.

As to the other objections urged, we think it is a sufficient answer that the defendant secured the personal presence of the witness Leake after the interrogatory and answer complained of had been introduced in evidence by plaintiff, and that the witness, without objection, testified, in substance, to the same effect as he did in the answer of which complaint is made. Ry. Co. v. Eckles, 25 Tex. Civ. App. 179, 60 S. W. 831. Said witness testified, in part, as follows:

"When I first saw Kidwell he was on my front porch in a sitting or stooping position; I don't remember which. He pulled up by the door or screen to get into the house. The bannister is in the office, made like rails, and he pulled up by those to get upstairs. I put medicine on him for awhile and for the first two or three days, or five or six days, it seemed to pain him whenever I rubbed him. When I would try to move or rub his ankle for the first few days it would pain him, when I would try to put liniment on it. I have seen people suffer—not a great deal —and have noticed their countenance and appearance when suffering. When I would move Kidwell or rub him, apparently he seemed to be in pain. And when I would move his right leg at all, it would seem to pain him."

[1] Furthermore, a witness named Geo. T. Sharpe, a farmer, and therefore not a medical expert, testified without objection that he took the plaintiff to Leake's hotel in his car and that plaintiff "was complaining and groaning all the while, and seemed to be suffering considerably with his foot and ankle." Moreover, it is well-recognized rule of evidence that a nonexpert witness may give an opinion when he also states the facts upon which his opinion is based. Ry. Co. v. Brune (Tex. Civ. App.) 181 S. W. 547; Taylor v. Jackson (Tex. Civ. App.) 180 S. W. 1142; McCabe v. S. A. Traction Co., 39 Tex. Civ. App. 614, 88 S. W. 387, affirmed in 101 Tex. 647; Turner v. Strange, 56 Tex. 141. We are of the opinion that these two assignments do not present material error, and they are hereby overruled.

In the third assignment complaint is made of the refusal of the court to instruct the jury that, if the light that would have shown upon the place where the plaintiff is alleged to have stepped into a hole and received his injury was obscured by "busses" or other rigs, then the defendant company would not be responsible for the light being thus shut off, and would not be guilty of negligence in failing to have that portion of its platform properly lighted at the time of the alleged injury. The evidence showed that there was a platform of brick, cement, or other such material around the depot building, and that the depression in which plaintiff claimed to have fallen was caused by the removal of or the absence of several bricks in the platform; that there was a small street light on a pole some 75 feet west of the depot and another street light some distance from the depot on the east. These lights seem to have been the only means of lighting the outside of the depot building and the platform. There was some evidence to the effect that at the time of this injury there were some "busses" or rigs standing on the west side of the depot. On cross-examination plaintiff testified:

"Yes; I think the light was about 30 or 40 yards west of the depot. Between the light west of the depot and the hole that I fell in there were some rigs standing out there. I do not know just how far it was from the hole to where the rigs were standing; and I do not know how far it was from the rigs up to the light. I could give no estimate of that distance. I do not know whether it is a fact or not that the busses and rigs were way up the track west of the depot, so as not to prevent the light shining on the hole, from the light west of the depot; owing to the distance, I could not say. I do not know of anything else that would prevent the light west of the depot shining on that hole except those rigs. Those rigs were vehicles of transfer people, I suppose, and I do not know how many there were. There was also a light at the corner down across the street, but I do not think that it would shine on this hole; if anything prevented it, it would be the corner of the depot—I do not know whether that did prevent it or not."

[2] We do not think the evidence cited and relied on by appellant to support this assignment required the trial court to give the charge requested. Articles 6591 and 6693, V. S. Texas Civil Statutes, require every railroad company doing business in this state to keep their depots and passen-

249 S.W.—20

ger houses well lighted for the comfort and accommodation of the traveling public. This duty on the part of the railway company has been held to include the exercise of due care to have their station platforms sufficiently lighted to enable passengers to board and to alight from the trains in reasonable safety. Tex. Cen. R. Co. v. Wheeler, 52 Tex. Civ. App. 603, 116 S. W. 83, 88, writ denied. It has also been held a railroad company has the right of control over its depots and platforms and may make and enforce rules, regulations, and instructions with reference to the use thereof by persons seeking to carry on any business therein or thereon. Denton v. T. & P. Ry. Co. (Tex. Civ. App.) 160 S. W. 113; F. W. & D. C. Ry. Co. v. White et al. (Tex. Civ. App.) 156 S. W. 241; G., C. & S. F. Ry. Co. v. Puckett (Tex. Civ. App.) 82 S. W. 662. Therefore, if these transfer rigs were stationed on the grounds of the defendant company, they were under the control of said company as to the place and manner of being so stationed. If the railway company depended on the street lights for the lighting of its platform, and permitted transfer rigs or "busses" to intercept the lights, or caused the portion of the platform where the depression was to be rendered dark thereby, it could not excuse itself from the due care required of it to keep its platform lighted because of such interference. Moreover, we think the testimony of plaintiff quoted is not of sufficient probative force to the effect that these rigs did in fact interfere with the lights shining on the place where the excavation or hole was in the platform to require the giving of the charge requested, independent of the other reasons heretofore given. Therefore the third assignment is overruled.

[3] The fourth specification is leveled at that paragraph of the court's charge which reads as follows:

"Railroad companies are not insurers of the safety of their passengers further than would be required by the exercise of such a high degree of foresight as to possible dangers and such a high degree of prudence in guarding against them as would be used by a very cautious, prudent and competent person under similar circumstances, and such a high degree of prudence is required of them."

This statement of the law has been approved by our Supreme Court in a number of cases, among which might be named Ry. Co. v. Halloren, 53 Tex. 53, 37 Am. Rep. 744; Ry. Co. v. Welch, 86 Tex. 203, 24 S. W. 390, 40 Am. St. Rep. 829; Gallagher v. Bowie, 66 Tex. 266, 17 S. W. 407; G., C. & S. F. Ry. Co. v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 609. Therefore we find no error in the charge in the respect mentioned.

The eighth, ninth, and tenth assignments are grouped, and complain of that portion of the court's charge in which he instructed the jury that if they found for the plaintiff under foregoing instructions, then in estimating the damages the jury might take into consideration the time which he had lost, if any, by reason of said injuries, and the physical pain and mental anguish which he had suffered, if any, and which he would probably suffer in the future, if any, by reason of such injuries, etc. The complaint is that such charge gives an improper measure of damages in that:

"(a) Said charge authorized the jury in assessing plaintiff's damages to take into consideration the physical pain and mental anguish which he may suffer in the future by reason of his injuries; * * * (b) * * * and to take into consideration the damaged capacity of the plaintiff to earn money in the future, regardless of whether his injuries are temporary or permanent."

[4] We think the objection leveled at this portion of the court's charge is not well taken. If plaintiff was entitled to recover by reason of his injuries, and, at the time of the trial had not fully recovered therefrom, he would be entitled to damages for impaired capacity to labor and earn money and for future pain and suffering, which he might endure, even though his injuries or impairment should not prove to be permanent in their character. Though subsequent to the trial he might entirely recover from his injuries and be restored to his former strength and capacity, yet he would be entitled to damages for the suffering and impaired capacity to earn money, to which he might be subjected by reason of his injuries and defendant's liability therefor, and his right to recover would not be dependent upon the permanency of the effects of said injuries. A plaintiff injured by reason of the negligence of a defendant is entitled to compensation for loss of time which he has sustained prior to the trial and which he will probably sustain in the future, and his right to recover is not determined by the length of time during which he may suffer from such injuries. But of course the amount he is entitled to recover depends upon the extent of his injuries and the resulting incapacity and suffering. Davis, Pruner & Howell v. Woods, 107 Tex. 377, 180 S. W. 100.

[5] The eleventh assignment urges that the verdict of the jury and judgment of the court is contrary to and not supported by the evidence, in that the undisputed evidence shows that plaintiff was guilty of contributory negligence in stepping into a hole without looking or paying any attention as to where he was stepping at the time. The evidence shows that, while the plaintiff was standing on the platform talking to some parties and waiting for the train, he saw the headlight of the train, which he was expecting to board, coming over the hill. He testified as follows:

"It wasn't over five minutes at the outside from the time that I commenced talking to this party until I started back to the train, and that is when I stepped in the hole. Yes, sir; the train had then run into the station and stopped. The car with the parties in that I was talking to was right at the southwest corner of the depot; I could not tell you exactly how far from the depot or train. When I left these parties and started for the train, I started directly toward the train, when the train ran up and stopped right in front of the depot. I started directly for the train, going by the end of the depot, passed the west end of the depot, I suppose it is. That is the only way that I could go, without going plumb around the depot. Right west of the depot there is a pavement. When I started for the train there, I started over that pavement west of the depot, but I did not get over it. I got along I suppose about the west end of the depot, and it being so dark that I could not see, I stepped in this hole, with my right foot, and fell toward the end of the depot and knocked my head into the end of the building, and knocked my hat off. When I stepped in that hole, it was not light enough that I could see the hole. I did not see the hole that I stepped in."

We think this evidence is sufficient, as well as other evidence that might be quoted, to sustain the conclusion of the jury and the court that the plaintiff was not guilty of contributory negligence in stepping into the hole in the platform, and the eleventh assignment is overruled, and also the twelfth, which urges that the verdict and judgment in this respect is contrary to the great weight and manifest preponderance of the evidence.

[6] The thirteenth and fourteenth assignments, complaining of the alleged excessiveness of the verdict, are likewise overruled. Without quoting the evidence in detail upon the extent of the injuries, it is sufficient to state that the evidence of the plaintiff and his witnesses is to the effect that he sprained his ankle and bruised his hip and suffered other injuries as a result of the fall; that he was confined to his bed and room from August 8 to September 4, 1916; that during said time he suffered practically all the time, and at times intensely, from the injuries, and that after he left the hotel he tried to work at various forms of employment, picking cotton, mining, etc., and that in all his efforts to work he experienced pain by reason of his said injuries; that, in attempting to work in the mines, he found he could work but a few minutes at a time and would have to stop and straighten up; that his injuries had hurt him both night and day; that there was a stiffness in his hip joint that prevented his taking a full step, and that at the time of the trial this effect of his injuries still remained; that there was nothing wrong with his hip prior to the injuries; that his ankle was still weak and hurt him a little at the time of the trial, but that the ankle was practically well. The suit was filed September 21, 1916, and the trial occurred November 9th thereafter. Plaintiff's testimony was to the effect that, at the time of the trial, he was not able to do regular work continuously, or to follow his usual employment as a miner; that he had been accustomed to make from $3 to $3.50 per day as a miner, and that he had been forced to quit mining since his injuries; that the injuries decreased his earning capacity something like one-half of what it was before. In the light of the evidence of the plaintiff and his witnesses as to the extent of his injuries, which the jury evidently believed, we are not prepared to say, either that the verdict is excessive, or that it shows the existence of passion, sympathy, or prejudice on the part of the jury, and, therefore assignments 13 and 14 are overruled.

[7] In the fifteenth assignment, error is charged to the court's action in overruling the motion for new trial, because it is claimed that two witnesses, who testified by deposition during the trial, subsequently made affidavit that in testifying as to the depth of the depression they were mistaken in stating that it was 5 or 6 inches deep; that in fact subsequent to the trial they measured the hole and found it to be from 2⅝ to 3¾ inches in depth. We do not think, even though this descrepancy could reasonably be claimed to be material, that the defendant below has shown sufficient diligence to entitle it to a new trial on the ground of newly discovered evidence. The depot and platform belonged to the defendant, and no one could reasonably be expected to know more about the depth of the depression than the employees in the service of the defendant, who were working in and around said depot. If the defendant failed to secure testimony as to this feature of the evidence prior to or during the trial, in the absence of any good reason for not so securing it—and none has been shown—it cannot avail itself of the affidavits aforementioned on the part of these two witnesses, in order to set aside the verdict and judgment already rendered.

All assignments are overruled, and the judgment is affirmed.

CONNER, C. J., not sitting, serving on Writ of Error Committee at Austin.